UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHANDONG YINGUANG CHEMICAL | } | |
| INDUSTRIES JOINT STOCK CO., LTD., | } | |
| | } | |
| Plaintiff, | } | |
| VS. | } | CIVIL ACTION NO. H-08-1601 |
| | } | |
| MICHAEL POTTER, | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

Presently before the Court are Defendant's Motion to Dismiss (Doc. 4); Plaintiff's Response to Defendant's Motion to Dismiss (Doc. 6); and Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss (Doc. 7). Upon review and consideration of these documents, as well as the relevant legal authority, the Court hereby ORDERS that Defendant's motion is GRANTED.

### 1.    Background & Relevant Facts

Plaintiff Shandong Yinguang Chemical Industries Joint Stock Co., Ltd., ("Yinguang") filed suit against Defendant Michael E. Potter ("Potter") on May 21, 2008, asserting the following causes of action: (1) fraud and fraudulent inducement and 2) piercing the veil/ breach of contract. Defendant has moved to dismiss both of Plaintiff's claims for failure to state a claim upon which relief can be granted.

These claims center around two contracts, called for convenience Contract No. 7 and Contract No. 8, between Yinguang and Beston Chemical Corporation ("Beston"). Doc. 1 at ¶6-8. In these contracts, Beston agreed to buy and Yinguang agreed to sell explosive booster components utilized in both the minerals and construction industries. *Id*. Potter was the CEO,

director and sole shareholder of Beston.  *Id*.  As such, Yinguang seeks to hold him liable for fraudulent inducement into the two contracts *Id*.  Yinguang allegedly relied on Potter's misrepresentations and omissions about Beston's ability to perform and, thus, was led into entering into these contracts and performing its end of the bargain.  *Id*.

Additionally, Yinguang seeks to pierce Beston's corporate veil and hold Potter individually liable for the breach of contract because Potter allegedly used Beston's corporate form as a sham to perpetrate a fraud on Yinguang.  Doc. 1 at ¶6-8.  Specifically, Yinguang asserts that Potter made misrepresentations and omissions about Beston's ability to perform while "funneling" proceeds from the resale of the chemicals by Beston to third party companies for Potter's personal benefit.  *Id*.  The corporate form was abused twice under this scenario.  First, Potter allegedly used Beston to perpetrate a fraud because Yinguang relied on Beston's corporate form to transfer assets to Beston. *Id*.  Next, Potter abused the corporate form by transferring those same assets out of Beston and into other corporations owned by Potter.  *Id*.

According to Yinguang, before Contract No. 7 and Contract No. 8 were breached, Yinguang, Potter, and Beston had an ongoing business relationship.  Doc. 1 at ¶9.  From November 2001 to February 2004, Yinguang provided chemicals to Beston in a series of six contracts.  *Id*.  Potter personally negotiated the contracts, which involved shipping the chemicals from Shandong, China to Texas.  *Id*.  Once the bill of lading issued on the shipment, Beston paid Yinguang's shipping agent according to an agreed schedule.  *Id*.  Beston had been late on payments before but had "generally" met its obligations to Yinguang.  *Id*.

Yinguang alleges that Beston fell behind on its payments and, as a result, on July 20, 2003, Potter visited Yinguang's offices and met with Sun Bowen ("Bowen"), President of Yinguang, and other Yinguang employees to create an amended pay schedule.  Doc. 1 at ¶11.

According to Yinguang, Potter made representations at this meeting that Beston had the ability to, and would, pay for current and future shipments and that Beston was in "sound financial condition." *Id.*

On February 2, 2004, Potter returned to Shandong to meet with Bowen about the upcoming Contract No. 7.  Doc. 1 at ¶12.  Contract No.7, more accurately named Contract No. BST-SYG-022504, was executed on February 25, 2004 and involved the sale of chemicals for a total amount of $1,369,216.80.  *Id.* at ¶10.  At the February 2, 2004, Yinguang alleges that Bowen requested a letter of credit to cover future shipments, including Contract No.7, but that Potter represented it was unnecessary.  *Id.* at ¶12.  Potter allegedly reassured Bowen that Beston would make regular and timely payments.  *Id.*  Yinguang also alleges that, at the February 2 meeting Potter significantly omitted the information that Beston had been unprofitable in 2003 and that Beston sought and was refused an increased line of credit from its bank that, it was apparent at the time, would affect Beston's financial condition.  Doc. 1 at ¶12.

In the spring of 2004, Potter allegedly sent a series of emails promising Beston would pay Yinguang for current and future obligations.  Doc. 1 at ¶13.  Contract No. 7 had a bill of lading date of April 28, 2004.  *Id.* at ¶10.  In an April 26, 2004, email Potter told Bowen of Beston's financial difficulties but assured him that "Yinguang will see continual, constant payments from [Beston]."  *Id.* at ¶13.  In an April 30, 2004, email Potter told Bowen that Beston would make payments on a frequent basis.  *Id.*  In a May 24, 2004, email Potter told Bowen that Beston would continue to honor its commitments.  *Id.*  Yinguang alleges it subsequently learned that Potter knew these representations were false when he made them.  *Id.*

The first payment on Contract No.7 was due on May 28, 2004.  Doc. 1 at ¶10.

Beston missed this payment and, by the time Contract No. 8 was executed, was still in default. *Id*. at ¶10, 14. Contract No. 8, more accurately called Contract No. BST-SYG-060104 was executed on June 1, 2004, and provided for the sale of chemicals in exchange for $1,328,644.80. *Id*. at ¶10. According to Yinguang, as the August 25, 2004, date for shipping the Contract No.8 chemicals approached, the Chinese chemical company intended not to load the shipment because of Beston's continuing non-payment of Contract No. 7. *Id*. at ¶14. Then, on or about August 21, 2004, Potter instructed Yuntao He ("He"), a representative of Beston, to reassure Bowen that Potter would make Beston meet its obligations to Yinguang. *Id*. Yinguang shipped the Contract No. 8 chemicals. *Id*.

Beston allegedly resold the chemicals. Doc. 1 at ¶15, 16.Yinguang, however, never received any payments from Beston on Contract No. 7 and No. 8. *Id*. Yinguang claims it relied on Potter's representations that Yinguang would be paid by Beston and that Beston was financially sound to enter into the two contracts. *Id*.

Yinguang sued Beston for breach of contract in Harris County, Texas, state court on August 12, 2005. Doc. 1 at ¶17. Subsequently, Beston and Yinguang entered into a settlement agreement on February 1, 2006 pursuant to which Yinguang would dismiss suit once Beston had made final payment on Contract No. 7. *Id*. Although Beston paid Yinguang $499, 216.80 on March 1, 2006, it never made full payment. *Id*. at ¶18.

On April 14, 2006, Beston filed a voluntary petition for bankruptcy under Chapter 11. *Id*.. Yinguang had an unsecured claim for $2,198,644.80 in the bankruptcy proceeding. *Id*. Pursuant to a settlement agreement, this time between Yinguang and the Plan Agent for the bankruptcy proceeding, Yinguang released Beston and the Plan Agent from any further liability.

*Id.*  The Plan Agent of the bankruptcy estate also entered into a settlement agreement with Potter whereby the estate released all of its claims against him.  Doc. 4 at ¶41.

## II.   <u>Legal Standard on Motion to Dismiss</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss a case for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.  *Bell Atlantic Corp. v. Twombly*, __U.S.___;127 S. Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted).  A plaintiff must allege enough facts to state a claim to relief that is "plausible" on its face.  *Id.* at 1974.  However, a Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted."  *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).  Therefore, the complaint must be liberally construed in favor of the plaintiff, all reasonable inferences are to be drawn in favor of the plaintiff's claims, and all factual allegations pleaded in the complaint must be taken as true.  *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).  Nevertheless, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss.  *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).  In ruling on a Rule 12(b)(6) motion, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint."  *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

### III.   Discussion

#### a.   Whether Yinguang's Claim of Fraud Satisfies the Pleading Requirements of Fed. R. Civ. P. 9(b).

Potter seeks the dismissal of Yinguang's claims for fraud and fraudulent misrepresentation on the grounds that they fail to meet the pleading requirements of Federal Rule of Civil Procedure 9(b). While complaints generally need contain only a short and plain statement of the cause of action, claims alleging fraud must comply with Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other condition of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff must include the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999) (internal citation omitted) (alteration in original). This is known as the "who, what, when, where, and how of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (citation omitted).

Fraud occurs where a contracting party makes false promises to perform a contract thereby inducing a contract, and, subsequently, fails to perform. *Lyda Constructors v. Butler Mfg. Co.*, 103 S.W.3d 632, 638 (Tex. App. 2003).

In *Bell Atl. Corp. v. Twombly*, __U.S.__; 127 S. Ct. 1955, 1965 (2007). The Supreme Court introduced a new standard for pleadings in federal court. In order for pleadings to survive a motion to dismiss: "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. The Supreme Court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id* at 1974

It is not sufficient for the plaintiff to state a legal conclusion as fact and recite the elements necessary to support a cause of action.  *Id*. At 1964-65.  Potter argues that Yinguang's pleadings do little more than this.   Given Rule 9(b)'s heightened pleading requirements, the factual deficiencies of the Complaint are evident.

Potter asserts that Yinguang did not sufficiently plead the contents of the misrepresentations.  He concedes that Yinguang alleges with particularity the time and place of the alleged fraudulent statements, but argues that Yinguang makes insufficient allegations to flesh out the contents of the promises.

Potter also argues that the intent element of a fraudulent inducement claim has not been pled to the level of the plausible.  In Texas, the fact that a contract was breached constitutes no evidence that at the time the contract was entered into there was no intention of performing it.  *Formosa Plastics Corp. United States v. Presidio Engineers,* 960 S.W. 2d 41, 48 (Tex. 1998).  In order to plead fraud in the inducement, where intent is shown through a breach of contract, the complaint must indicate "prompt, substantial non-performance" of the contract induced.   *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 386 (5th Cir. 2003).  In *United States v. Shah*, 44 F.3d 285, 293 (5th Cir. 1995), the Fifth Circuit stated, "Generally, there is no inference of fraudulent intent not to perform from the mere fact that a promise made is subsequently not performed." (footnote omitted); *See also* Restatement (Second) of Torts § 530(1).

Where substantial nonperformance is coupled with other probative factors, however,  such as "where only a short time elapses between the making of the promise and the refusal to perform it, and there is no change in the circumstances," an intent not to perform when the promise was made may, in appropriate circumstances, be properly inferred. 37 Am. Jur. 2d,

Fraud and Deceit, § 478 (footnotes omitted); *Shah*, 44 F.3d at 293 n.14.   Yinguang does not allege that the contracts were breached quickly after the promises were made.   The first alleged misrepresentation was made on or about July 23, 2003. Doc. 1 at ¶11.   Contract 7 was not even executed until February 2, 2004. *Id* at ¶18.   Yinguang acknowledges in paragraph 16 of the Complaint that Beston was not legally able to pay Yinguang on Contract 8 in September 2004 because government sanctions prevented the sale or use of the product delivered pursuant to Contract 8.   The Complaint's allegations show only that Yinguang was paid $499,216.80 in partial payment pursuant to a settlement substantially after the two shipments. *Id* at ¶18 Intent necessary to state a claim for fraudulent inducement cannot be inferred from Yinguang's allegations.

Potter further argues that Yinguang has not alleged facts to support that the alleged assertion by Potter, on or about July 20, 2003, that Beston was financially sound was even a misrepresentation. *Id* at ¶11.   Potter argues that the term is vague and subject to interpretation.    Yinguang does not allege that Beston was not in sound financial condition as of July 2003, only that it was unprofitable in the year 2003. *Id* at ¶12.  Plaintiff further alleges that Beston failed "to obtain the increased line of credit that it was seeking from its bank, which would apparently affect Beston's financial condition."   *Id*.  Plaintiff does not, however allege that this failure to obtain the increase in its line of credit made it "financially unsound," or exactly when the denial of the additional credit occurred, before or after July 20, 2003.

Potter argues that his alleged statement at the February 2, 2004 meeting "that a letter of credit would be unnecessary" (*Id*) is not supported by any factual allegations to show that Potter intended this statement as a reflection of the financial condition of Beston.  The

Court agrees that is not plausible that Yinguang could recover for a fraudulent affirmative misrepresentation based upon such an allegation

Yinguang also alleges that during the Spring of 2004 Potter promised that Beston would pay "for past and future shipments." *Id* at ¶13.   Thereafter, on April 26, 2004, Yinguang also alleged that, although Potter admitted that Beston was having financial difficulties, he assured Yinguang that the difficulties had been remedied and that Beston would pay.  On two other occasions, April 30, 2004 and May 24, 2004, Yinguang alleges, Potter sent emails to Yinguang promising to pay. *Id*.    Beston did not pay for Contracts No. 7 or No. 8 in 2004.  *Id*.   None of these promises to pay, which allegedly induced Yinguang to enter into Contract No. 8 and to ship the product covered by that contract, allege the actual financial condition of Beston or any facts that would support Yinguang's allegations that Potter never intended Beston to carry out those promises.

Yinguang's fraud and fraudulent inducement claims are essentially based upon the breach of contract of Beston.  The alleged misrepresentations and omissions of Potter, Beston's CEO, do not state a plausible cause of action in fraud against Potter.

**b.   Whether Yinguang Lacks Standing as to its Piercing the Corporate Veil Claim Because that Claim is "Property of the [Bankruptcy] Estate."**

Potter seeks to dismiss the piercing the corporate veil/breach of contract claim by arguing that Yinguang lacks standing to assert the claim because it is property of the Beston bankruptcy estate.  If the claim is part of the bankruptcy estate, since the bankruptcy estate has settled all claims by Beston, as debtor, against Potter, and Yinguang. Yinguang would be prevented from bringing a cause of action against Potter that recovered amounts due on its contracts with Beston.  The piercing the corporate veil/breach of contract claim tries to recover

assets that were allegedly taken by Potter from Beston (but due to Yinguang).  Those assets, then, were Beston's and, thus, should not be delivered to Yinguang except through the bankruptcy plan.  Accordingly, the Court finds Potter's argument has merit.

Because it is the central focus of this motion to dismiss, the Court reproduces here, in pertinent part, the claim asserted by Yinguang against Potter. In a count labeled "Breach of Contract/Piercing the Corporate Veil," Yinguang charged that:

> Yinguang seeks to recover against [Potter] for Beston's breach of contract because of [Potter's] actual fraud committed against Yinguang [] for which [Potter] personally benefited . . . Beston breached Contract No.7 and Contract No.8 by failing to pay amounts owed under these contracts . . . Yinguang seeks to pierce the corporate veil by disregarding the corporate form and hold [Potter] vicariously liable for Beston's breach of contract . . . [Potter] funneled the proceeds from the sale of the explosives components supplied by Yinguang [] to other corporations owned and controlled by [Potter], including BST Manufacturing, Inc. [Potter] likewise utilized Beston's corporate revenues derived from the sale of the explosives components supplied by Yinguang [] for his own personal gain.

(Doc. 1 at 8-9).

The filing of a bankruptcy petition creates an estate that is comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The phrase "all legal or equitable interests of the debtor in property" has been construed broadly, and includes "rights of action" such as claims based on state or federal law. *See Am. Nat'l Bank of Austin v. MortgageAmerica Corp.* (*In re MortgageAmerica Corp.*), 714 F.2d 1266, 1274 (5th Cir. 1983); *Schertz-Cibolo-Universal City v. Wright* (*In re Educators Group Health Trust*), 25 F.3d 1281, 1283 (5th Cir. 1994). If a claim belongs to the estate, then the bankruptcy trustee has exclusive standing to assert it. *In re Educators Group Health Trust*, 25 F.3d at 1284. However, the trustee has no right to bring

claims that belong solely to the estate's creditors. *See Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416 (1972).

The test has been simply stated by the Fifth Circuit:   "Whether a particular state cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case."  *Highland Capital Mgmt. LP v. Chesapeake Energy Corp.* (*In re Seven Seas Petroleum, Inc.),* 522 F.3d 575, 584 (5th Cir. 2008) (citing *In re Educators Group Health Trust*, 25 F.3d at 1284).  *Seven Seas*, relied on *Educators Group Health Trust*, which relied in turn on *In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987), and *MortgageAmerica.*

Yinguang's claim is 'property of the estate' because it seeks to recover assets that belong to the debtor.  Allowing creditors to bring claims to recover assets of the debtor disserves the purposes of bankruptcy law.  The bankruptcy estate seeks to promote the equal repayment of similarly-situated creditors.  The aggregation of claims in the hands of the bankruptcy trustee prevents a multi-jurisdictional rush to judgment by creditors that may cause issues of collateral estoppel, if, for example, some and not other creditors succeed in their claims of piercing the veil.  The bankruptcy laws also give the debtor breathing room to re-establish a viable business. Yinguang brings a claim to recover assets from the breach of contract between Beston and Yinguang from Potter as Beston's control entity.  Yinguang alleged in its complaint that Potter abused the corporate form by taking the proceeds of resale of the chemicals from Contracts No. 7 and No. 8.  If the Court allowed Yinguang to proceed with this claim, Yingunag would make a complete recovery of assets that were allegedly taken from Beston by Potter, and this would bypass the bankruptcy estate's priority in dealing with Beston's assets.

Although only Yinguang can allege the fraud necessary to pierce the veil under

the statutory exemption, the trustee of the Beston estate could always recover the same assets for the estate by pursuing Potter for abuse of the corporate form.  Then Yinguang would stand in line to recover its portion of those assets through the bankruptcy plan.  As for damages uniquely caused to Yinguang by actual fraud, Yinguang has attempted to recover these in an action for fraudulent misrepresentation.

In so deciding, this Court follows the reasoning of the Fifth Circuit in *MortgageAmerica*, where the court held that a claim by a creditor under the Fraudulent Transfer Act could not be brought because it was 'property of the estate.'  *In re MortgageAmerica Corp.,* 714 F.2d at 1275.   Only a creditor, and not a debtor, can bring a claim under the Fraudulent Transfer Act to recover assets from a transferee.  *Id.*  This fails the test set out in *Seven Seas* and *Educators Group Health Trust* because the debtor could not bring the claim itself.  Yet, the court in *MortgageAmerica* reasoned that, as the equitable title in the assets remained in the debtor under a fraudulent transfer claim, the claim was 'property of the estate' since the debtor had a "legal or equitable interest" in the property fraudulently transferred.  *Id.*  Yinguang seeks to recover assets from Potter to which Potter would have colorable title but over which Beston would retain equitable title.  The court is simply extending the reasoning in *MortgageAmerica* used for the Fraudulent Transfer Act to Yinguang's claim to pierce the corporate veil based on sham to perpetrate fraud.

Yinguang's claim to pierce the corporate veil by alleging a sham to perpetrate a fraud theory belongs to the bankruptcy estate because it seeks to recover assets allegedly taken by Potter from Beston and over which the bankruptcy estate has prior claim by virtue of the power and purposes of bankruptcy law.   For the foregoing reasons, Potter's motion to dismiss Yinguang's claim of breach of contract/piercing the veil is granted.

SIGNED at Houston, Texas, this 31st day of March, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE